UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

SECURITIES AND EXCHANGE
COMMISSION,

            Plaintiff,

    - against -

JULIAN T. TZOLOV and ERIC S.
BUTLER,

           Defendants.
------------------------------------------------------X

           MEMORANDUM
        OPINION AND ORDER

      08 Civ. 7699 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

       Plaintiff, the Securities and Exchange Commission (the "SEC" or

"Commission"), brings this civil enforcement action against defendant Eric S.

Butler ("Butler") alleging violations of Section 17(a) of the Securities Act of 1933

(the "Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b); and Rule 10b-5

of the Exchange Act, 17 C.F.R. § 240.10b-5.[1]  The Commission now seeks

summary judgment under Rule 56 of the Federal Rules of Civil Procedure based on

collateral estoppel arising from a jury verdict in a parallel criminal case, *United*

*States v. Julian Tzolov and Eric Butler*, 08 CR 370 (JBW) (the "EDNY Case"),

---

[1]     *See* Complaint §§ 61, 64.

which was prosecuted in the Eastern District of New York ("EDNY").[2]  In

addition, the Commission seeks to permanently restrain and enjoin Butler from

committing future violations of Section 17(a) of the Securities Act, Section 10(b)

of the Exchange Act and Rule 10b-5 thereunder.[3]  Butler opposes both summary

judgment and the proposed injunction on the following grounds: (1) the issues in

the instant civil action were not necessarily decided in the EDNY Case (identity of

issues); (2) Butler did not have a full and fair opportunity to litigate the criminal

charges against him; and (3) the Commission is not entitled to the injunction it

seeks.  For the following reasons, the Commission's motion is granted and Butler

is permanently restrained and enjoined from future violations of Section 17(a) of

the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 of the

Exchange Act.

---

[2]  On August 17, 2009, following a two-week trial, the jury returned a guilty verdict against Butler with regard to all three counts charged in the S-4 Superseding Indictment: (1) Conspiracy to Commit Securities Fraud (18 U.S.C. § 371); (2) Securities Fraud (15 U.S.C. §§ 78j(b) and 78ff); and (3) Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349).  Prior to trial, defendant Tzolov pled guilty to these same counts and implicated Butler in his plea allocution and trial testimony.  In this action, Tzolov agreed to enter into a Consent Judgment wherein he voluntarily agreed to the same relief the SEC now seeks against Butler.  *See* Judgment as to Defendant Julian T. Tzolov, dated June 15, 2010 ("Tzolov Judgment").

[3]  The Commission is not seeking the monetary relief sought in the Complaint (disgorgement, monetary penalties) at this time but reserves the right to seek such relief after Butler's appeal of his criminal conviction is decided.

2

## I.    LEGAL STANDARD

"The doctrine of offensive collateral estoppel permits a plaintiff to bar a defendant from relitigating an issue that was decided in a prior case against the defendant."[4]  Collateral estoppel applies when:

> "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgement on the merits."[5]

Furthermore, "[t]he moving party has the burden of demonstrating the identity of the issues and the opposing party has the burden of showing lack of a full and fair opportunity to litigate the issue in the prior action."[6]

"'It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal

---

[4]     *Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008).

[5]     *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007) (quoting *NRLB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999)).

[6]     *Point Developers, Inc. v. FDIC*, 961 F. Supp. 449, 460 (E.D.N.Y. 1997).

case.'"[7]   The rationale behind this rule is as follows:

> "The Government bears a higher burden of proof in the
> criminal than in the civil context and consequently may rely
> on the collateral estoppel effect of a criminal conviction in
> a subsequent civil case. Because mutuality of estoppel is no
> longer an absolute requirement under federal law, a party
> other than the Government may assert collateral estoppel
> based on a criminal conviction. The criminal defendant is
> barred from relitigating any issue determined adversely to
> him in the criminal proceeding, provided that he had a full
> and fair opportunity to litigate the issue."[8]

## B.   Section 10b and Rule 10b-5

The well-established elements of a violation of Section 10(b) and/or

Rule 10b-5 are as follows: (1) there was an untrue statement of fact or an omission

of fact;[9] (2) the misrepresentation or omission is material;[10] (3) the exclusion or

misrepresentation is made with scienter;[11] (4) the exclusion or misrepresentation is

---

[7]   *Maietta v. Artuz*, 84 F.3d 100, 103 n.1 (2d Cir. 1996) (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).

[8]   *SEC v. Shehyn*, No. 04 Civ. 2003, 2010 WL 3290977, at *3 (S.D.N.Y. Aug. 9, 2010) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986) (citations omitted)).

[9]   *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490 (S.D.N.Y. 2002).

[10]   *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

[11]   *See Aaron v. SEC*, 446 U.S. 680, 691 (1980) ("[S]cienter is an element of a violation of § 10(b) and Rule 10b-5, regardless of the identity of the plaintiff or the nature of the relief sought.").

4

made in relation to the purchase or sale of securities;[12] and (5) the exclusion or

misrepresentation is made in connection with interstate commerce or through the

mail system.[13]

### C.    Section 17(a)

"Section 17(a) of the Securities Act is a general prohibition against

fraud in the offer or sale of securities, using the mails or the instruments of

interstate commerce."[14] "Courts have applied collateral estoppel in the securities

fraud context because the elements necessary to establish civil liability under

Section 17(a) and 10(b) are identical to those necessary to establish criminal

liability under Section 10(b)."[15]

---

[12]    *See SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450,1466 (2d Cir. 1996). *See also SEC v. Opulentica*, LLC, 479 F. Supp. 2d 319, 327 (S.D.N.Y. 2007) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)).

[13]    *See SEC v. Texas Gulf Sulphur, Co.*, 401 F.2d 833, 862 (2d Cir. 1968).

[14]    *SEC v. McCaskey*, No. 98 Civ. 6153, 2001 WL 1029053, at *4 (S.D.N.Y. Sept. 6, 2001).

[15]    *Haligiannis*, 470 F. Supp. 2d at 382 (citing *SEC v. Roor*, No. 99 Civ. 3372, 2004 WL 1933578, at *7 (S.D.N.Y. Aug. 30, 2004) (granting summary judgment on Section 17(a) and Section 10(b) claims after finding defendant was estopped from contesting liability based on his pleading guilty to criminal count of Section 10(b) violation)). *Accord McCaskey*, 2001 WL 1029053, at *4 (holding that the defendant's guilty plea to a Section 10(b) and Rule 10b-5 violation served as an admission of all of the elements of the SEC's Section 17(a) claim); *Stewart v. United Australian Oil, Inc.*, No. 73 Civ. 3020, 1975 WL 362 (S.D.N.Y. Mar. 12,

## II.   DISCUSSION

### A.   Identity of the Issues

Butler argues that "while there is a factual overlap between the

Complaint and Indictment, an accurate analysis of each shows that the issues in the

two cases are not identical, that the SEC cannot establish that the allegations in its

Complaint were 'actually decided' in the EDNY Case, or that the issues that the

SEC seeks to establish by collateral estoppel were 'necessary to support a valid and

final judgment' in the EDNY Case."[16]  More specifically, according to Butler,

> the allegations in the Indictment and the Complaint are not
> the same, rendering collateral estoppel inapplicable.  The
> Indictment alleged conduct in violation of securities laws
> directed against two entities – GlaxoSmithKline plc.
> ("Glaxo") and Randgold Resources, Ltd. ("Randgold") –
> that was not alleged in the Complaint.  The jury in the
> EDNY Case rendered a general verdict, such that the SEC
> cannot establish that the jury in the EDNY Case found that
> defendant, Eric Butler, engaged in any conduct alleged in
> the Complaint.   This precludes a finding of collateral
> estoppel.[17]

As posited by Butler, the distinction between the two cases is that in the EDNY

_____

1975) (holding that the defendant's guilty plea to a Section 17(a) violation
established his civil liability for a Section 10(b) violation).

[16]   Defendant Eric S. Butler's Memorandum of Law in Opposition to the
Securities and Exchange Commission's Motion for Summary Judgment ("Opp.
Mem.") at 5.

[17]   _Id._ at 1.

Case, the jury heard evidence regarding six Customers: the four customers

referenced in the Complaint as Customers A, B, C and D, and later identified as

Potash Corporation of Saskatchewan Inc. ("Potash"), ST Microelectronics Ltd.

("STMicro"), Roche International Ltd. ("Roche"), and Compania Panamena De

Aviacion SA ("Copa"), plus two additional Customers, Glaxo and Randgold.

Butler then speculates that the jury's verdict could have been based on conduct

solely directly against Glaxo and/or Randgold to the complete exclusion of the

four other Customers.[18]  Arguably, under this scenario, the criminal conviction

would not support the application of collateral estoppel.[19]

       There are two problems with Butler's argument.  The first is that the

term "Customers" as used in the Complaint is not restricted to Customers A, B, C,

and D.  Rather, the Complaint defines the term "Customers" as those "corporate

customers that had authorized Tzolov and Butler to purchase only auction rate

---

[18]    *See id.* at 8 ("The charge to the jury in the EDNY Case, therefore, permitted Mr. Butler to be convicted based upon the unanimous finding by the jury of conduct directed solely at Glaxo, or Randgold.  The jury rendered a general verdict of guilty in regard to Count II of the Indictment.  Thus, the precise basis of the jury's verdict on Count II is not know.  It cannot be determined, therefore, whether Mr. Butler was convicted of securities fraud in the EDNY Case based upon any conduct alleged in the Complaint.").

[19]    *See id.* ("Under these circumstances, the SEC's demand for summary judgment based upon Mr. Butler's conviction for securities fraud in the EDNY Case is meritless, because the SEC cannot establish that the allegations in the Complaint actually were determined, or necessarily decided, in the EDNY Case.").

securities collateralized by federally guaranteed student loans."[20]  Similar to the

Indictment's use of the generic term "Companies,"[21] the four Customers cited in

the Complaint were offered to illustrate Butler's fraudulent conduct and were not

offered as an exhaustive list of every victim of the fraud.  As a factual matter,

therefore, the Complaint encompasses Glaxo and Randgold in its definition of

Customers.

       *Second,* Butler was indicted, tried and convicted for making material

misrepresentations and omissions in the sale of auction rate securities collateralized

by debt obligations other than student loans.  These same misrepresentations and

omissions are the basis for the SEC's Complaint.  A comparison of the Indictment

and the Complaint reveals that the same conduct is alleged in both instruments.

Specifically, "The Fraudulent Scheme" section of the Indictment alleges the

following:

> 10.    Beginning in or about November 2004, without the
> knowledge or consent of the Companies, the
> defendants ERIC BUTLER and JULIAN TZOLOV
> engaged in a fraudulent scheme which included
> using the Companies' funds to purchase other types
> of ARSs [auction rate securities] on behalf of the
> Companies, including mortgage-backed CDO-ARSs
> [collateralized debt obligations-auction rate

---

[20]    Complaint ¶ 11.

[21]    *See* S-4 Superseding Indictment ¶¶ 7-12,14, 17.

securities] (the "Subject CDO-ARSs"), instead of the SL-ARSs [student loan-auction rate securities] which the Companies requested.

11.    As part of their fraudulent scheme, and to conceal the true nature of their conduct, the defendants ERIC BUTLER and JULIAN TZOLOV, among other things, sent to the Companies and directed others to send to the Companies emails in which TZOLOV and BUTLER, or others working at their direction, falsified the names of the products held by the Companies to make it appear that those products were SL-ARSs when they were, in fact, other types of ARSs, including the Subject CDO-ARSs.  The defendants engaged in this fraudulent scheme to enrich themselves.

12.    In approximately August 2007, the market for mortgage-backed CDOs, including the Subject CDO-ARSs, collapsed, and the various auctions for the Subject CDO-ARSs began to fail.  As a result of those auction failures, the defendants ERIC BUTLER and JULIAN TZOLOV were unable to sell the investments of the Companies and return their money.[22]

Included in the SEC's Complaint are the following nearly identical allegations:

1.    Defendants Julian Tzolov and Eric Butler, while registered representatives associated with Credit Suisse Securities (USA) LLC ("Credit Suisse"), made over [one] billion dollars of unauthorized purchases of auction rate securities for the accounts of corporate customers.   Tzolov and Butler concealed these unauthorized purchases by making false and misleading statements to their customers

---

[22]    *Id.* ¶¶ 10-12.

about the nature of the securities Tzolov and Butler had purchased for the customers and the assets collateralizing them. These customers authorized Tzolov and Butler to purchase only auction rate securities backed by federally guaranteed student loans, which Tzolov and Butler had promoted as low risk, highly liquid alternatives to investments like bank deposits, money market funds, and commercial paper. Instead, from at least February 2005 through August 2007, Tzolov and Butler purchased for these customers without authorization over $1 billion in auction rate securities collateralized by subprime mortgages, collateralized debt obligations ("CDOs"), mobile home contracts, and other non-federally guaranteed non-student loan collateral.

2.      To conceal their unauthorized purchases, Tzolov and Butler sent or caused to be sent to customers e-mails falsely stating or indicating that securities purchased for the customers were federally guaranteed student loan backed securities when they were not. Tzolov and Butler also sent or directed others to send e-mails to customers in which the names of the auction rate securities purchased for the customers were altered to conceal that the securities were CDOs or other auction rate securities collateralized by mortgages and other non-student loan collateral.

3.      In August 2007, most of the non-student loan backed auction rate securities that Tzolov and Butler had purchases became illiquid when auctions began to fail. As a result, several of Tzolov and Butler's corporate customers were stuck with at least $817 million in such securities that they did not want to buy and are now unable to sell. These securities also have lost significant value.

As the above excerpts demonstrate, the same fraudulent conduct charged in the S-4 Superseding Indictment was alleged in the Commission's Complaint. It is the nature of the conduct that is relevant to the collateral estoppel inquiry, not the Customer or Company to which that conduct was directed. Given the identity of issues in the EDNY Case and the instant action, as set forth above, it is evident that the allegations in the Complaint were litigated and necessarily decided in the EDNY Case. Butler's argument against the application of collateral estoppel on these grounds is therefore rejected.[23]

### B.    Full and Fair Opportunity to Litigate

Butler next argues that allegedly erroneous rulings by the district court in the EDNY Case deprived him of a full and fair opportunity to litigate that case. The presence of appellate issues, however, will not defeat the application of collateral estoppel. This argument has been rejected in similar circumstances, as follows:

---

[23]    "[I]t matters not what the precise charges in the indictment and civil complaint are, so long as they are predicated on the same factual allegations." *Roor*, 2004 WL 1933578, at *7 (citing *SEC v. Dimensional Entm't Corp.*, 493 F. Supp. 1270, 1277 (S.D.N.Y. 1980) (holding that the factual allegations underlying defendant's wire fraud convictions were sufficiently similar to the alleged securities fraud violations so as to conclusively establish his liability in a subsequent civil enforcement action)).

11

> All of the perceived unfair events during trial that [the
> defendant] now raises fail to demonstrate that he lacked a
> "full and fair opportunity to litigate." [The defendant]
> describes three matters in particular that he views as
> "unfair": (1) improper jury instructions, (2) incorrect
> evidentiary rulings under Federal Rule of Evidence 404(b),
> and (3) improper admission of hearsay statements. These
> alleged procedural deficiencies, which [the defendant] is
> challenging in his Second Circuit appeal, are not the sorts
> of deficiencies that deprive a party of a full and fair
> opportunity to litigate and therefore justify preventing
> application of collateral estoppel.[24]

Under the circumstances, including a jury trial from July 22, 2009 through August

17, 2009, where Butler was represented by a team of capable attorneys, Butler had

a full and fair opportunity to litigate the EDNY Case.[25]  Butler's argument to the

contrary, therefore, does not defeat collateral estoppel.  Nor does the pendency of

---

[24]    *SEC v. Resnick*, 604 F. Supp. 2d 773, 781 (D. Md. 2009) ("[W]hether
these matters may constitute reversible error is a question for the Second Circuit to
decide.  It is not appropriate for this court to engage in a full-scale review of the
quality of the litigation in the prior proceeding before making a collateral estoppel
determination.").

[25]    *See SEC v. Tandem Mgmt. Inc.*, No. 95 Civ. 8411, 2001 WL 1488218,
at *11 (S.D.N.Y. Nov. 21, 2001) ( (holding that defendant had a full and fair
opportunity to litigate the issues in a criminal trial "where [defendant] faced severe
penalties and had every incentive to contest vigorously the charges against him;"
where defendant "was also given the full panoply of criminal procedural
safeguards, including a standard of proof that was more favorable to him than in
these civil proceedings;" and where the defendant's criminal trial "which was held
before a jury, took considerable time and involved numerous witnesses and
evidence").

Butler's appeal of his conviction to the Second Circuit.[26]

## C.    Injunctive Relief Is Appropriate

"Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws."[27] "For this form of relief, the Commission has to make a substantial showing of likelihood of success as to both a current violation and the risk of repetition."[28] In deciding whether to enjoin a particular defendant, courts look to the following factors:

> the fact that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations

---

[26]    *See SEC v. Namer*, No. 97 Civ. 2785, 2004 WL 2199471, at *8 (S.D.N.Y. Sept. 30, 2004) ("'[T]he pendency of a criminal appeal generally 'does not deprive a judgment of its preclusive effect.'") (quoting *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 905 F.2d 610, 621 (2d Cir. 1990) (quotation marks and citation omitted)); *SEC v. Westerfield*, No. 94 Civ. 6697, 1997 WL 282241, at *2 (S.D.N.Y. May 27, 1997) (stating that "the fact that [defendant] is presently appealing his criminal judgment does not prevent the doctrine of collateral estoppel from attaching to the present case).

[27]    *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (citing 15 U.S.C. § 78u(d)).

[28]    *See SEC v. Unifund SAL*, 910 F.2d 1028, 1040 (2d Cir. 1990).

13

could be anticipated.[29]

Butler argues that a permanent injunction is not appropriate here because he "is now far removed from the securities field, is no longer in the business that gave rise to this case and the EDNY Case, and presents no threat of future misconduct."[30]  Despite this self-serving statement, there is a substantial likelihood that Butler will commit future securities violations if not restrained, including: (1) the egregiousness of the instant violations, as to both quality and quantity; (2) the high degree of scienter involved; (3) the repeated nature of the violations; and (4) Butler's apparent lack of remorse, as evidenced by his conduct in this litigation including his almost frivolous opposition to the instant motion.[31]  Given the totality of the circumstances, a permanent injunction preventing Butler from committing future securities violations, including violations of Section 17(a), Section 10(b) and Rule 10b-5, is appropriate.[32]

---

[29]     *SEC v. Commonwealth Chem. Secs., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978) (quotation marks and citation omitted).

[30]     Opp. Mem. at 23-24.

[31]     *See SEC v. Musella*, 748 F. Supp. 1028, 1042 (S.D.N.Y. 1989) ("[A] court may consider additional factors bearing on the likelihood of future violations, including the degree of scienter involved, lack of remorse, attempts to mislead the SEC, as well as opportunities to repeat the prohibited conduct.").

[32]     Presumably, the permanent injunction will not have any collateral consequences for Butler if he remains "no longer in the business that gave rise to

14

## III.   CONCLUSION

For the reasons stated above, the Commission's motion for summary judgment and entry of a permanent injunction against Butler is granted.  The Commission is hereby directed to submit a proposed Judgment as to Defendant Eric S. Butler, permanently restraining the same conduct and securities violations restrained in the Tzolov Judgment, within ten (10) days of the issuance of this Opinion and Order.   The Clerk of the Court is directed to close this motion (Document # 21) and this case.[33]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             January 26, 2011

---

the allegations of securities fraud." Opp. Mem. at 23.

[33]       If the SEC decides to pursue monetary penalties against Butler, once his appeal of the EDNY Case is decided, it can file a new case which this Court will accept as related.

15

## - Appearances -

**For Plaintiff:**

David Stoelting, Esq.
Eric M. Schmidt, Esq.
Securities and Exchange Commission
New York Regional Office
Three World Financial Center
New York, NY 10281
(212) 336-0174

**For Defendant Eric S. Butler:**

Paul T. Weinstein, Esq.
Emmet, Marvin & Martin, LLP
120 Broadway - 32nd Floor
New York, NY 10271
(212) 238-3090

**For Defendant Julian T. Tzolov:**

Benjamin Brafman, Esq.
Brafman & Associates, P.C.
767 Third Avenue
New York, NY 10017
(212) 750-7800